## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. _____,

CLARA DORN,

      Plaintiff,

v.

EDWARD A. MUELLER,
CHARLES L. BIGGS,
K. DANE BROOKSHER,
PETER S. HELLMAN,
R. DAVID HOOVER,
PATRICK J. MARTIN,
CAROLINE MATTHEWS,
WAYNE W. MURDY,
JAN L. MURLEY,
MICHAEL J. ROBERTS,
JAMES A. UNRUH,
ANTHONY WELTERS,
QWEST COMMUNICATIONS INTERNATIONAL INC., and
CENTURYTEL, INC.

      Defendants.

---

## COMPLAINT FOR BREACH OF FIDUCIARY DUTY AND JURY DEMAND

---

Clara Dorn ("Plaintiff"), by her attorneys, files this Complaint ("Complaint) against the Defendants, and alleges upon information and belief, except for those allegations that pertain to her, which are alleged upon personal knowledge, as follows:

### JURISDICTION AND VENUE

1.     This Court has jurisdiction over the state law claims pursuant to 28 U.S.C. § 1332.

2.      Each defendant named herein has sufficient minimum contacts with this District, state, or the United States so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

3.      Venue is proper in this District pursuant to 28 U.S.C. § 1391.

## SUMMARY OF THE ACTION

4.      Plaintiff brings this action on behalf of herself against Qwest Communications International Inc. ("Qwest" or the "Company"), the Qwest's Board of Directors and Officers, and CenturyTel, Inc. ("CenturyTel"), arising out of a transaction in which CenturyTel will acquire all shares of Qwest common stock (the "Proposed Acquisition").   In approving the Proposed Acquisition, the Individual Defendants (hereinafter defined) have breached their fiduciary duties of loyalty, good faith, due care and disclosure by, *inter alia*, (i) agreeing to sell to CenturyTel without ensuring that Plaintiff would obtain adequate, fair and maximum consideration under the circumstances and (ii) engineering the Proposed Acquisition to benefit themselves and/or CenturyTel without regard for Plaintiff.   Moreover, as alleged further herein, Qwest and CenturyTel aided and abetted the Individual Defendants' breaches of fiduciary duty.   Accordingly, this action seeks to enjoin the Proposed Acquisition and compel the Individual Defendants to properly exercise their fiduciary duties to Plaintiff.

## PARTIES

5.      Plaintiff is, and has been at all times relevant hereto, a Qwest shareholder.

6.      Qwest is a Delaware corporation, headquartered at 1801 California Street, Denver, Colorado 80202.  Qwest is and at all times relevant hereto was listed and traded on the New York Stock Exchange under the symbol "Q."  The Company specializes in the service of a range of telecommunications services throughout the United States.

7.      Defendant CenturyTel is a telecommunications company located in Monroe, Louisiana.  Defendant CenturyTel is a publicly traded company with securities trading on the New York Stock Exchange under the symbol "CTL."

8.      Defendant Edward A. Mueller ("Mueller") is a Qwest director and has been a director since 2007.  Defendant Mueller also serves as the Company's Chairman of the Board and Chief Executive Officer.

9.      Defendant Charles L. Biggs ("Biggs") is a Qwest director and has been a director since 2004.

10.     Defendant K. Dane Brooksher ("Brooksher") is a Qwest director and has been a director since 2004.

11.     Defendant Peter S. Hellman ("Hellman") is a Qwest director and has been a director since 2000.

12.     Defendant R. David Hoover ("Hoover") is a Qwest director and has been a director since 2005.

13.     Defendant Patrick J. Martin ("Martin") is a Qwest director and has been a director since 2005.

14.     Defendant Caroline Matthews ("Matthews") is a Qwest director and has been a director since 2005.

15.     Defendant Wayne W. Murdy ("Murdy") is a Qwest director and has been a director since 2005.

16.     Defendant Jan L. Murley ("Murley") is a Qwest director and has been a director since 2007.

17.     Defendant Michael J. Roberts ("Roberts") is a Qwest director and has been a director since 2009.

18.     Defendant James A. Unruh ("Unruh") is a Qwest director and has been a director since 2005.

19.     Defendant Anthony Welters ("Welters") is a Qwest director and has been a director since 2006.

20.     The defendants identified in ¶¶ 8-19 are at times collectively referred to as the "Individual Defendants."

21.     The defendants identified in ¶¶ 6-7 are at times collectively referred to as the "Corporate Defendants."

22.     The Individual Defendants, as officers and directors of the Company, owe fiduciary duties to the public shareholders, including Plaintiff.  As alleged herein, they have breached their fiduciary duties by failing to maximize shareholder value in a proposed sale of the Company.

## SUBSTANTIVE ALLEGATIONS

23.     Despite recent difficulties caused by the global recession, the long-term prospects for Qwest's services and finances are favorable.  Qwest has stated as much in recent releases.  On October 28, 2009, Qwest issued a press release reporting the Company's financial results for the third quarter 2009.  In the October 28, 2009 press release, the Company reported net income of $136 million, and earnings per share of $0.08, equal to the previous year.  Defendant Mueller was quoted in the October 28, 2009 press release as saying:

> Our focus on perfecting the customer experience while maintaining strong financial discipline again enabled us to deliver solid results in the quarter. . . . The ability of the Qwest team to steer through difficult market conditions has been exemplary. This is evident in key measures of our performance including strategic revenue growth, reduced operating expenses, stable EBITDA, strong free cash flow and an improving leverage ratio.  As a result of our stronger-than-expected performance to

date, *we are raising our full year 2009 free cash flow outlook*.  We are optimistic about our prospects as the economy begins to improve in the quarters ahead.

24.      On January 6, 2010, Qwest filed a Form 8-K with the U.S. Securities and Exchange Commission ("SEC") announcing that the Company expected its full-year Earnings Before Interest Taxes Depreciation and Amortization ("EBITDA") will be near the upper end of its guidance of $4.25 billion to $4.4 billion, and that its full-year adjusted free cash flow will exceed the upper end of its guidance of $1.6 billion to $1.7 billion.

25.      On February 16, 2010, Qwest issued a press release announcing the Company's financial results for the fourth quarter and full year 2009, which included net income in the fourth quarter of $108 million, and an increase in full year 2009 earnings per share to $0.38.  The financial results were described in the February 16, 2010 press release as "solid growth in business and consumer data services, [and Qwest] continued to produce strong cash flows and made significant progress on key initiatives."  In the same press release, defendant Mueller was quoted as saying:

> In the quarter, we continued to create innovative approaches to drive efficiency and perfect the customer experience . . . Throughout 2009, the Qwest team stood up to the challenges of a tough economy and highly competitive markets to deliver value for our shareholders.  In particular, we did an excellent job of generating cash flows and strengthening the balance sheet. In 2010, our goal is to continue to excel in these areas while adding improved revenue performance to our list of achievements.  *We continue to be optimistic about our prospects in the coming year*.

26.      The positive financial results of the Company, as reported by Qwest in recent press releases and SEC filings, make the decision to sell the Company to CenturyTel at the Offer Price a questionable one.

27.      On April 22, 2010, the Company announced the Proposed Acquisition in a press release.  The April 22, 2010 press release stated in pertinent part:

> CenturyLink and Qwest Communications announced today that their boards of directors have approved a definitive agreement under which CenturyLink will acquire Qwest in a tax-free, stock-for-stock transaction.  Under the terms of the agreement, Qwest shareholders will receive 0.1664 CenturyLink shares for each

share of Qwest common stock they own at closing. Upon closing of the transaction, CenturyLink shareholders are expected to own approximately 50.5 percent and Qwest shareholders are expected to own approximately 49.5 percent of the combined company.

Based on the closing stock price of CenturyLink on April 21, 2010, the per share consideration to be received by Qwest shareholders would be equivalent to $6.02 of CenturyLink stock, which represents a premium to Qwest shareholders of approximately 15 percent over Qwest's closing stock price on April 21, 2010. Based on the closing stock price of CenturyLink on April 21, 2010, the transaction reflects an enterprise value of Qwest of approximately $22.4 billion, including the assumption of $11.8 billion of Qwest net debt outstanding as of December 31, 2009.

The parties expect the transaction to be accretive to CenturyLink's free cash flow per share, excluding integration costs, immediately following the close of the transaction. Leveraging CenturyLink's proven integration experience, the transaction is expected to generate annual operating and capital synergies of approximately $625 million when fully recognized over a three- to five-year period following the close of the transaction.

28.     The timing of the Proposed Acquisition has been engineered to take advantage of a recent decline in the trading price of Qwest's shares caused by the nationwide recession, and if consummated will likely result in Plaintiff, a Qwest shareholder, losing the value of her investment in Qwest. Qwest has yet to disclose material information concerning the Offer Price in SEC filings related to the Proposed Acquisition, nevertheless, it is likely the Offer Price reflects an inadequate premium to the trading price of the Company's common stock prior to the announcement of the Proposed Acquisition, given that Qwest has promising finances and products.

29.     Furthermore, and in violation of the duty of the Individual Defendants to maximize shareholder value, the agreement between Defendants to sell Qwest to CenturyTel (the "Merger Agreement") contains terms designed to favor the Proposed Acquisition and deter alternative bids. The improper terms of the Merger Agreement include the following:

(a)     a non-solicitation clause prohibiting Qwest from seeking a third-party bid that might maximize shareholder value;

(b)     a clause providing that the details of any unsolicited but favorable bid for Qwest must be transmitted to CenturyTel prior to any public announcement thereof, effectively permitting CenturyTel to match the alternative bid and thereby deter the likelihood of the alternative bid being made; and

(c)     an improper $350,000,000 termination fee in the event of certain circumstances resulting in Qwest accepting a superior bid for the Company.

30.     Unless enjoined by this Court, the defendants will continue to breach and/or aid the breaches of fiduciary duties owed to Plaintiff and may consummate the Proposed Acquisition, which will deprive the Plaintiff of her fair share of Qwest's valuable assets and businesses, to the irreparable harm to the Plaintiff.

## INDIVIDUAL DEFENDANTS' FIDUCIARY DUTIES

31.     In any situation where the directors of a publicly traded corporation undertake a transaction that will result in either a change in corporate control, in addition to their collective duty of candor such that shareholders are provided with all information necessary for the shareholders to consider and vote on such a transaction on a fully informed basis, the Individual Defendants have an affirmative fiduciary obligation to act in the best interests of the Company's shareholders, including the duty to negotiate and obtain for the shareholders maximum value for their property, namely, their shares.  To diligently comply with these duties, the Individual Defendants may not take any action that:

(a)     adversely affects the value provided to the Company's shareholders;

(b)     will discourage or inhibit alternative offers for a purchase of control of the Company or its assets that will maximize shareholder value;

(c)     contractually prohibits them from complying with their fiduciary duties; and/or

(d)      will provide the Board or the Company's executives or other insiders with preferential treatment at the expense of, or separate from, Plaintiff and place their own pecuniary interests above those of the Company and/or its shareholders.

32.      In accordance with their duties of loyalty and good faith owed to the Plaintiff, the Individual Defendants, as directors and/or officers of Qwest, are obligated to refrain from:

(a)      participating in any transaction where their loyalties are divided;

(b)      participating in any transaction where they are entitled to receive a personal financial benefit not equally shared by Plaintiff; and/or

(c)      unjustly enriching themselves at the expense or to the detriment of Plaintiff.

33.      Plaintiff alleges herein that the Individual Defendants, separately and together, in connection with the Proposed Acquisition, violated, and are violating, the fiduciary duties they owe to Plaintiff as a shareholder of Qwest.  As a result of the Individual Defendants' breaches of their fiduciary duties and Qwest's and CenturyTel's aiding and abetting those breaches, Plaintiff will not receive maximized value for her Qwest common stock in the Proposed Acquisition.

## SELF DEALING

34.      Because of their positions with Qwest, the Individual Defendants are in possession of non-public information concerning the financial condition and prospects of Qwest and especially the true value and expected increased future value of Qwest and its assets, which have not been properly disclosed to Plaintiff, as a Quest public shareholder.  Having made the decision that Qwest is for sale, the Individual Defendants have a duty to maximize the value Plaintiff, as a Qwest shareholder, will receive for her property, her Qwest shares.  Despite their duty to maximize shareholder value, the Board has demonstrated that it has material conflicts of interest and that the Individual Defendants are acting to better their own interests at the expense of Plaintiff, as a public shareholder

of Qwest.  These conflicts appear to have led the Board to enter into an agreement where it refuses to consider other parties' bids to enter into a transaction to acquire Qwest. .

35.     The announcement of the Proposed Acquisition reveals that four Qwest directors, including defendant Mueller, would be appointed to positions at CenturyTel.  This creates a clear conflict of interest for those directors who have a duty to act in the best interests of the Company's shareholders, not themselves.

### FIRST COUNT

### (Breach of Fiduciary Duty
### Against The Individual Defendants)

36.     Plaintiff incorporates and adopts by reference herein each and every allegation set forth above as if fully set forth herein.

37.     The Individual Defendants, having made the decision that Qwest is for sale, assumed and owed fiduciary duties to Plaintiff, as a Qwest shareholder.  In pursuing, negotiating and making disclosures to Plaintiff , as a Qwest shareholder, regarding the sale of the Company, the Individual Defendants failed, and are continuing to fail, to act with the care an ordinarily prudent person in a like position (that of a director of a public company obligated to ensure that the shareholders receive maximized value for their property (their Qwest shares)) would use under the same or similar circumstances.

38.     As alleged herein, having made the decision that Qwest is for sale, the Individual Defendants have breached their fiduciary duties owed to Plaintiff by, among other things, failing to maximize the value that Plaintiff will receive for her Qwest shares.  The Individual Defendants have initiated a process to sell Qwest that, in addition to failing to maximize shareholder value, vests the Individual Defendants with benefits that are not shared equally by Plaintiff.  By agreeing to the Proposed Acquisition and refusing to equally consider alternative opportunities to sell the Company

in the future, the Individual Defendants have capped the price of Qwest at a price that does not adequately reflect the Company's full value.  Moreover, the Individual Defendants failed to sufficiently inform themselves of Qwest's value and/or disregarded the actual full value of the Company in an effort to benefit themselves or otherwise.  Furthermore, as evidenced by the Board's effort to prevent acceptance of other parties' offers, any alternate acquirer, in addition to facing severe hurdles designed to discourage their pursuing the acquisition of Qwest, will be faced with engaging in discussions with a management team and Board that is committed to the Proposed Acquisition.  In addition, the Individual Defendants have failed to fulfill their fiduciary duties to Plaintiff by failing to disclose all material information necessary to allow Plaintiff to make an informed decision whether or not to vote in favor of the Proposed Acquisition. The Individual Defendants have also breached their fiduciary duties of care, loyalty, candor and independence owed by each of the Individual Defendants to Plaintiff.

39.     Therefore, unless the Individual Defendants' conduct is enjoined by the Court, the Individual Defendants will continue to breach their fiduciary duties owed to the Plaintiff and that prevents the disclosure to of material information necessary for Plaintiff to assess and determine whether to vote in favor of the Proposed Acquisition, all to the damage and detriment of Plaintiff.

## SECOND COUNT

### (Aiding and Abetting the Board's Breaches of Fiduciary Duty Against All Defendants)

40.     Plaintiff incorporates and adopts by reference herein each and every allegation set forth above as if fully set forth herein.

41.     The Corporate Defendants had actual knowledge of the Individual Defendants' breaches of fiduciary duty as herein alleged and had actual knowledge that their conduct as herein alleged would further and enable such breaches of fiduciary duties by the Individual Defendants.

Each of the Individual Defendants had actual knowledge of each of the other Individual Defendants' breaches of fiduciary duties as herein alleged and had actual knowledge that their conduct as herein alleged would further and enable such breaches of fiduciary duties by the other Individual Defendants. The Corporate Defendants knowingly assisted, aided and encouraged the Individual Defendants' breaches of fiduciary duties in connection with the Proposed Acquisition, and the Corporate Defendants knowingly provided substantial assistance, aid and encouragement with regard thereto. The Individual Defendants' breaches of fiduciary duties as alleged above would not have occurred without the knowing assistance, aid and encouragement of the Corporate Defendants and each of the Individual Defendants. In connection with discussions and negotiations regarding the Proposed Acquisition, CenturyTel obtained sensitive non-public information concerning Qwest's operations and thus had the advantage to acquire the Company at a price not reflective of maximized shareholder value.

42.    As a result of the conduct of the Defendants as alleged herein, Plaintiff has and will in the future be damaged by, among other things, not receiving maximized value for her Qwest shares and not being provided with all material information necessary to allow an informed decision regarding the disposition of her Qwest shares.

43.    Plaintiff has no adequate remedy at law.

**WHEREFORE**, as to both the First Count and the Second Count, Plaintiff demands relief, in her favor, and against the Defendants, as follows:

A.    Declaring and decreeing that the Proposed Acquisition was entered into in breach of the fiduciary duties of the Individual Defendants and is therefore unlawful and unenforceable, and rescinding and invalidating any merger agreement or other agreements that Defendants entered into in connection with, or in furtherance of, the Proposed Acquisition;

B.      Preliminarily and permanently enjoining Defendants, their agents, counsel, employees and all persons acting in concert with them from consummating the Proposed Acquisition;

C.      Directing the Individual Defendants to exercise their fiduciary duties to obtain a transaction that is in the best interests of, and that results in the maximization of shareholder value for the benefit of, Qwest's shareholders;

D.      As appropriate, an award of appropriate damages, (including compensatory damages and punitive damages) against Defendants, jointly and severally, in an amount to be determined at trial, together with prejudgment interest at the maximum rate allowable by law;

E.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees; and/or

F.      Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff requests a jury on all issues and in all proceedings triable before a jury.

DATED: April 23, 2010                    Respectfully Submitted,


                                         *s/ Kip B. Shuman*
                                         Kip B. Shuman
                                         Rusty E. Glenn
                                         **THE SHUMAN LAW FIRM**
                                         885 Arapahoe Avenue
                                         Boulder, CO  80302
                                         Telephone:  303/861-3003
                                         303/484-4886 (fax)
                                         kip@shumanlawfirm.com
                                         rusty@shumanlawfirm.com

                                         *Liaison Counsel for Plaintiff*

**BROWER PIVEN**
  **A Professional Corporation**
David A.P. Brower
488 Madison Avenue
Eighth Floor
New York, New York 10022
Telephone: (212) 501-9000
Facsimile:  (212) 501-0300

Charles J. Piven
**BROWER PIVEN**
  **A Professional Corporation**
1925 Old Valley Road
Stevenson, Maryland 21153
Telephone: (410) 332-0030
Facsimile: (410) 685-1300

*Counsel for Plaintiff*